¶ 18 Being unable to agree with the majority, I respectfully dissent.
 {¶ 19} The majority has sustained the objection of Respondent and in effect allowed the Respondent additional temporary total disability compensation, after having been determined previously to have reached maximum medical improvement. The commission's decision, in my view, is deficient from the standpoint of not complying with State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203. More specifically, I agree with the magistrate's conclusion that the commission has not provided adequate reasoning with respect to new and changed circumstances warranting additional compensation after there has been a determination of maximum medical improvement. I therefore dissent.
 DECISION IN MANDAMUS {¶ 20} Relator, Americare Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted a new period of temporary total disability ("TTD") compensation to respondent Mary K. Logan ("claimant") and ordering the commission to deny her that compensation.
Findings of Fact:
 {¶ 21} 1. Claimant sustained a work-related injury on June 23, 1999, and this claim has been allowed for: "Sprain lumbosacral, herniated nucleus pulposus L5-S1."
 {¶ 22} 2. TTD compensation was awarded and paid to claimant from June 27, 2000, through January 31, 2001. Claimant was found to have reached maximum medical improvement ("MMI") as of February 1, 2001, pursuant to the C-84 of Michael S. Lefkowitz, M.D.
 {¶ 23} 3. Claimant was examined by Brian F. Griffin, M.D., who issued a report dated September 20, 2001. In that report, Dr. Griffin indicated that he was surprised to find that claimant had been declared MMI inasmuch as she had just begun treating with his firm, Pain Control Consultants, Inc. Dr. Griffin further stated that his practice has much to offer claimant to help reduce her pain, improve the quality of her life, improve her functionality, and return to the workplace a more fit and comfortable individual on as few medications as possible. Dr. Griffin also indicated that a functional capacity examination was necessary before claimant returned to work. He indicated that, at the present time, in not knowing her functional capacity, he would support a finding of temporary total disability.
 {¶ 24} 4. Claimant was examined by W. David Leak, M.D., who completed a C-84 dated September 28, 2001, indicating that claimant was complaining of increased pain around her tailbone/lumbosacral area, mainly on the left side. He opined that she was temporarily totally disabled from August 20, 2001 until an estimated return to work date of October 20, 2001. He further noted that he believed additional allowances should be made in the claim and that claimant was awaiting authorization for treatment.
 {¶ 25} 5. Dr. Leak completed two other C-84 forms, one dated October 12, 2001, and the other dated January 26, 2002. Dr. Leak noted that claimant continued to have an increase of pain in the tailbone area and that they were still awaiting authorization for additional treatment.
 {¶ 26} 6. Claimant was examined by David C. Randolph, M.D., on behalf of the employer. Dr. Randolph issued a report dated August 30, 2001, wherein he opined that claimant's subjective complaints were not substantiated by objective findings. He also opined that the treatment claimant had been receiving from Dr. Griffin was excessive and that perhaps claimant was in need of a psychological consultation.
 {¶ 27} 7. Dr. Griffin issued a second report dated October 17, 2001, wherein he challenged the statements and opinion made by Dr. Randolph. He noted further that claimant had had no problems with pain prior to her injury.
 {¶ 28} 8. Claimant's application for TTD compensation and requesting authorization of treatment was heard before the district hearing officer ("DHO") on January 28, 2002. The DHO denied the request for TTD compensation on the basis that there is a lack of sufficient new and changed circumstances that justify the request. The DHO noted that although claimant has changed physicians, there is no indication that her condition has changed in any appreciable way since the time she was found to be at MMI. The DHO also specifically relied upon the report of Dr. Randolph and denied claimant's request for a functional capacity evaluation and trigger-point injections.
 {¶ 29} 9. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on March 7, 2002. The SHO vacated the prior DHO order and granted claimant both TTD compensation and authorized further treatment as follows:
 {¶ 30} "The Staff Hearing Officer finds that there are new and changed circumstances sufficient to commence a new period of temporary total compensation from 08/20/2001 to 03/19/2002, and to continue upon submission of medical evidence. This temporary total compensation is based on the C-84's from Dr. Leak dated 9/28/2001, 10/12/2001 and 01/26/2002. The claimant credibly testified at hearing that she `knew that there was something still wrong' when she changed physicians and sought further treatment from Dr. Leak. Dr. Leak has requested authorization for a functional capacity evaluation and for 3 trigger point injections, and those are authorized as well. This finding is also supported by the reports of Dr. Griffin dated 09/20/2001 and 10/17/2001."
 {¶ 31} 10. Relator's appeal was refused by order of the commission mailed April 4, 2002.
 {¶ 32} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus.Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 34} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents them from returning to the former position of employment. Upon that predicate, the Ohio Supreme Court has held that TTD compensation shall be paid to a claimant until: (1) the claimant has returned to work; (2) the claimant's treating physician has made a written statement that the claimant is able to return to his former position of employment; or (3) the temporary disability has become permanent. State ex rel. Ramirez v.Indus. Comm. (1982), 69 Ohio St.2d 630. The term "permanent" has been defined as a condition which will with reasonable probability continue for an indefinite period of time without any present indication of recovery there from. Ohio Adm. Code Section 4121-3-32(A)(1) defines maximum medical improvement as follows: "`Maximum medical improvement' is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function." A finding of MMI precludes the payment of TTD compensation. State ex rel. Peabody Coal Co. v. Indus. Comm. (1993),66 Ohio St.3d 639.
 {¶ 35} Once a claimant had been found to have reached MMI, the claimant was precluded from receiving further TTD compensation. However, in State ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424, paragraph two of the syllabus, the court reconsidered its prior decision denying TTD compensation and held as follows: "Even where temporary total disability compensation payments have been previously terminated, R.C.4123.52 grants the Industrial Commission continuing jurisdiction to award temporary total disability compensation where the claimant has again become temporarily totally disabled." The court ruled in that her condition, even one which has reached MMI, can "flare-up" thereby rendering the claimant again temporarily totally disabled.
 {¶ 36} Relator contends that the commission abused its discretion in finding new and changed circumstances sufficient to warrant the payment of additional TTD compensation to claimant. Specifically, relator points out the length of time before claimant sought and received additional treatment and argues that the selective tissue conductivity tests were all within normal limits. As such, relator contends that there is not some evidence in the file upon which the commission could rely. Because the commission's order lacks any explanation concerning what new and changed circumstances were found to exist, a writ of mandamus is appropriate.
 {¶ 37} With regard to the length of time before claimant saw a different doctor, this magistrate notes that it appears that claimant continued to treat with her original physician after the commission terminated her TTD compensation upon finding that she had reached MMI. However, on her change of physician form dated May 25, 2002, she indicated that she was not happy with the treatment and that her doctor was doing nothing for her other than prescribing medications. Thereafter, in July 2001, claimant had the selective conductance tests performed. Claimant began treating with Dr. Leak as well as other doctors associated with Pain Control Consultants, Inc. Standing alone, this would not have been a reason for the commission to have denied claimant's request for an additional period of TTD compensation.
 {¶ 38} Relator also contends that the results of the selective tissue conductance tests were all within normal limits. However, upon review of those results, this magistrate notes that several of the findings came back with a greater than 51 percent chance of clinically significant disease and three of the tests came back showing significant pathology. As such, contrary to relator's assertions, the tests do not appear to have come back within normal limits. Instead, there were certain indicia that claimant did indeed have a problem. However, there is no explanation within any of the doctors' reports or C-84s to explain the significance of these findings. Although some of the results appear to be outside of "normal" limits, there is nothing to indicate whether these tests show that claimant's condition has changed.
 {¶ 39} According to the commission's order, the claimant testified that she knew she was having problems and she knew that she was not better. As such, she sought additional medical help. According to the reports of Dr. Griffin, it was his medical opinion that he could provide claimant with significant help which would lessen her pain and increase her potential for returning to work. The commission is certainly entitled to rely upon the testimony of the claimant. However, the commission's order does not indicate whether claimant testified that her condition worsened in any way.
 {¶ 40} This magistrate finds that the commission's order constitutes an abuse of discretion because there is no indication of what the new and changed circumstances are. This violates State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203. Several questions remain to be addressed including whether the claimant's pain had increased and subsequent to the finding she had reached MMI, whether the test results show a worsening of claimant's condition.
 {¶ 41} Based on the foregoing, this magistrate concludes that relator has demonstrated that the commission abused its discretion in granting temporary total disability compensation to claimant, and this court should issue a writ of mandamus ordering the Industrial Commission of Ohio to vacate its order granting TTD compensation and to issue a new order, granting or denying the requested compensation, after citing the evidence relied upon and providing an explanation for the decision which complies with the law.